IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DEON CLOPTEN,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT CROWTHER et al.<br><br>Defendants. | **MEMORANDUM DECISION<br>& ORDER GRANTING SUMMARY-<br>JUDGMENT MOTION**<br><br>Case No. 2:15-cv-782 DB<br><br>District Judge Dee Benson |

Plaintiff, inmate Deon Clopten, brings civil-rights claims against past Utah State Prison (USP) wardens Alfred Bigelow and Scott Crowther. *See* 42 U.S.C.S. § 1983 (2019). He argues Defendants violated his federal due-process and equal-protection rights by keeping him classified in housing more restrictive than the general population, from December 2002 through 2015.[1] (Doc. No. 5.)

Defendants filed a *Martinez* report, (Doc. No. 37), including these documents: (1) declarations of Defendants and other relevant Utah Department of Corrections (UDOC) personnel; (2) medical records; and (3) jail records, including grievances, assessments, physical-location history, housing logs, and procedures. (Doc. Nos. 37-45.) Based on the *Martinez* report and invoking qualified immunity, Defendants move for summary judgment. (Doc. No. 46.) Plaintiff opposes summary judgment; his evidence consists of UDOC memorandums, inmate

---

[1] Plaintiff's Complaint also had an Eighth Amendment claim for cruel and unusual punishment. (Doc. No. 5.) Represented by appointed counsel, Plaintiff later dropped this claim. (Doc. No. 67, at 2-3.) The Court therefore does not consider it further.

affidavits, grievances and responses, medical records, and his own declaration. (Doc. Nos. 5-2, 5-3, 5-4, 5-5 & 67-1.) The Court rules for Defendants.

## SUMMARY-JUDGMENT STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1)(A). Summary judgment's purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Once movant meets this duty, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1999) (citation omitted). In ruling on a summary-judgment motion, this Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

# UNDISPUTED MATERIAL FACTS[2]

1. In 2002, Plaintiff was convicted of first-degree murder, (Powell Decl. ¶ 13, Doc. No. 45), and sentenced to life in prison. (Crowther Decl. ¶ 8, Doc. No. 44.). He was initially assessed C-2-K classification code and assigned to Unita 2, USP. (Compl., at 5, Doc. No. 5.)

2. Defendant Bigelow was USP warden from July 2010-April 2014. (Bigelow Decl. ¶ 4, Doc. No. 40.)

3. Defendant Crowther was USP warden from April 2014-2016. (Crowther Decl. ¶ 4.) "He had no authority over Plaintiff Clopten's housing assignments." (Pl.'s Opp'n to Defs.' Summ. J. Mot., at 3, Doc. No. 67.)

4. USP reassessed Plaintiff's security classification annually and other times when he requested such review. (Powell Decl. ¶¶ 15-19; Ex. H, Doc Nos. 39, 41, 41-1.) His security classification was consistently Level 2, with a "notoriety override" that kept him in Uinta facilities. (Powell Decl. ¶ 13; Crowther Decl. ¶ 14.)

5. Inmates housed in Uinta participated in Offender Management Review (OMR) upon arrival. (Ex. M, Doc. 39.) After that, an inmate could request OMR as desired, but OMR was held at least yearly. (*Id.*; Crowther Decl. ¶ 10; Powell Decl. ¶ 10-13.) OMR is a meeting with the inmate, caseworker, housing-unit officers, and other relevant staff. (Bigelow Decl. ¶¶ 24-27.) OMR's purpose is to discuss the inmate's classification, housing, and privileges, like education, training, and employment. (*Id.*) OMR team members may recommend the inmate's housing score, or placement or removal of overrides. (*Id.*) Recommendations are reviewed by deputy wardens and other administrators in deciding whether to continue an override. (Crowther Decl. ¶¶ 15-18; Ex. L, Doc. No. 39.)

6. Plaintiff frequently used the OMR system. From 2010-2016, he met with his OMR team at least fifteen times. (Powell Decl. ¶¶ 18-19.) Each time, Plaintiff was told of his classification score, override, and housing assignment. He was allowed to appeal his classification score and override. (*Id.*) His notoriety override was left in place, despite his challenges and opinions of some UDOC administrators who recommended its removal. (Powell Decl. ¶¶ 12, 14, 16; Ex. H.)

7. "Neither Warden Crowther nor Bigelow had a role in assessing, reviewing, approving, or removing Clopten's notoriety override." (Bigelow Decl. ¶ 16; Crowther Decl. ¶ 15.)

8. In 2016, USP administration again re-assessed Plaintiff and, with input from USP staff, lifted the notoriety override and applied a security classification level of C-3-K. (Powell Decl. ¶ 26.) Plaintiff was transferred out of USP to Central Utah Correctional Facility, where he is currently housed in general population as a Level 3 inmate. (*Id.* ¶ 27.)

---

[2] Drawn from Plaintiff's opposition to summary-judgment motion. (Doc. No. 67.)

## ANALYSIS

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining . . . "complaint [must] make clear exactly *who* is alleged to have done *what* to *whom*"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court . . . "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

*Estate of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019) (some alterations added).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." *Id*. at 790 n.5. Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id*.

Under these guidelines and in light of the undisputed material facts, the Court concludes Plaintiff has not affirmatively linked Defendant Bigelow or Crowther to an alleged violation of Plaintiff's federal constitutional rights regarding his housing and security classification based on his notoriety override. The undisputed material facts state that Plaintiff was kept at a Level 2, primarily based on a notoriety override. (Pl.'s Opp. to Summ. J., at 4-5.) In this case, the

important facts are not whether Plaintiff's housing classification was overly restrictive or whether the override was warranted. The dispositive, crucial undisputed fact is that "[n]either Warden Crowther nor Bigelow had a role in assessing, reviewing, approving, or removing Clopten's notoriety override." (Pl.'s Opp. to Summ. J., at 7.) This is reinforced by another explicitly stated, undisputed, material fact: Defendant Crowther "had no authority over Plaintiff Clopten's housing assignments." (Pl.'s Opp'n to Defs.' Summ. J. Mot., at 3, Doc. No. 67.) And there is likewise no evidence presented that Defendant Bigelow had any such authority. Indeed, the undisputed facts show that recommendations for "the inmate's housing score or the placement or removal of Overrides . . . are reviewed by *Deputy Wardens and other administrators* in determining whether to continue an Override." (Crowther Decl. ¶¶ 15-17; Ex. L (emphasis added).)

## CONCLUSION

The Court concludes that Defendants Bigelow and Crowther are not affirmatively linked to a violation of Plaintiff's civil rights.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. No. 46.) This action is dismissed in its entirety with prejudice.

Dated this 24th day of September, 2019.

BY THE COURT:

_____
JUDGE DEE BENSON
United States District Court

5